UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

YAN FANG JIANG and
REEDIGROUP, LTD.,

                     Plaintiffs,

v.

HANNON GROUP, LTD., and
TODD J. HANNON,

                     Defendants.

Case No. 14-CV-309-JPS

ORDER

Before the Court are three motions: (1) Hannon Group, Ltd.'s motion to vacate entry of default; (2) Todd Hannon's motion to vacate entry of default; and (3) Neal S. Krokosky's Local Rule 7(h) non-dispositive motion to withdraw as attorney for the plaintiffs (*See* Docket #41, #43, #54).[1] The facts leading up to the Court ordering the clerk to enter default against Hannon Group, Ltd. ("Hannon Group") and Todd Hannon ("Mr. Hannon") are laid out in full in the Court's prior order (Docket #40); for the sake of brevity, then, the Court will not reiterate those facts, instead referring to the prior order as necessary.

The Court will address each motion in turn.

1.     HANNON GROUP'S MOTION TO VACATE DEFAULT

Hannon Group's motion asserts two separate grounds for vacatur of the Clerk of Court's entry of default. First, Hannon Group argues that "the service of process asserted to obtain the default was constitutionally defective

---

[1] The title of Hannon Group, Ltd's motion requests that the Court "vacate default and [its] order striking [the defendant's] answer." (Docket #43 at 1). The title of Todd Hannon's motion requests that the Court "reconsider [its] order of September 16, 2014[,] and…vacate default." (Docket #41 at 1).

on due process grounds, rendering void the order of default and any judgment entered." (Docket #43 at 1). Second, Hannon Group argues that it "can demonstrate good grounds…for vacating the default." *Id.* at 10. Namely, that it has: (1) good cause for default; (2) taken quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint. *Id.* at 10 (citing *Mirbeau of Geneva Lake, LLC v. City of Lake Geneva*, 746 F. Supp. 2d 1000, 1019 (E.D. Wis. 2010)); *see also* Federal Rule of Civil Procedure 55(c).

The first objection—that service of process was defective on due process grounds—is a nonstarter. The Court previously ruled that Hannon Group was properly served (*see* Docket #40 at 4), and Hannon Group has not raised any new arguments or asserted any new facts proving otherwise.

Even if the Court were to entertain Hannon Group's arguments, it would reach the same result. In its initial brief, Hannon Group averred that "the certified mailing [to Hannon Group's address on file with the Wisconsin Department of Financial Institutions ("WDFI")] was in fact *returned* to Plaintiff without delivery, stating a new address." (Docket #43 at 11) (emphasis added). However, in its reply—after the plaintiffs disproved that theory, (*see* Docket #46 at 11 & n.15) (pointing out delivery occurred)—Hannon Group concedes that the mailing was delivered to a forwarding address (*see* Docket #52 at 4) (stating that "[t]he only possible conclusion was that the letter was delivered to that unknown address"), but argues that one cannot assume that "the signatory located at the wrong address was an 'agent' of Hannon Group, without a shred of proof other than the existence of a signature." *Id.* at 5. Hannon Group goes on to repeat the point that the forwarding address—421 Broad Street, Lake Geneva, WI—was "an address that has no connection to the defendant." *Id.*

"*[A]u contraire* (or, to be more Wagnerian, *im Gegenteil*)," *Minnesota v. Carter*, 525 U.S. 83, 98 (1998) (Scalia, J. concurring), the Court finds that 421 Broad Street is an address known to Hannon Group and has a connection to the defendants. Specifically, Mr. Hannon's declaration states that on April 18, 2014, "at [his] direction a form was mailed to the [WDFI] to change the registered office of Hannon Group, Ltd…to the office of Chamberlain & Henningfield, an accounting firm…that had agreed to act as the registered office." (Docket #43-4 at 3). The WDFI returned that letter to the accounting firm on May 2, 2014, rejecting the application on various grounds; Mr. Hannon *received this rejection letter* (albeit a few weeks later), *id.*, presumably because as he stated, the accounting firm "had agreed to act as the registered office." *Id.*

And, the Court takes judicial notice, *see Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997), of the fact that Chamberlain & Henningfield *is located* at 421 Broad Street, Lake Geneva, WI. *See, e.g.,* Contact Us, Chamberlain & Henningfield, CPAs, LLC, http://www.cchcpas.com/contact_us.html (last visited Jan. 27, 2015) (listing address as 421 Broad Street, Lake Geneva, WI); Chamberlain & Henningfield, Official Site of Lake Geneva, WI, http://www.lakegenevawi.com/m/ Chamberlain_-and-_Henningfield.aspx (last visited Jan. 27, 2015) (same). *This revelation collapses every single service of process argument that Hannon Group has made.*

On the second ground—that the Court should vacate the default—Hannon Group argues that it has met the requirement to vacate the entry of default and, further, that sanctions involving a "lesser penalty than a multi-million dollar judgment" are a proper exercise of the Court's

discretion. (*See* Docket #43 at 14); (*see also* Docket #52 at 6) (stating that "[i]f required, [Hannon Group] respectfully suggests compensation for Plaintiff for all attorney fees, private investigator expense and other costs incurred in attempting to procure service").

The plaintiffs summarily ignore Hannon Group's latter suggestion—the proposal to sanction Hannon Group with something less than a judgment in excess of three million dollars—arguing only that Hannon Group is not entitled to relief from the entry of default. It is not entitled to relief, the plaintiffs argue, because Hannon Group: (1) "has not identified a factual or legal basis from which the Court can conclude that there is 'good cause' to grant relief"; and (2) has "failed to identify any facts that suggest that [it] used 'quick action' to correct the default." (Docket #46 at 12, 13).

To begin, the Court will outline the standard for vacating entry of default. "Relief from entry of a default requested prior to entry of judgment is governed by Fed. R. Civ. P. 55(c)." *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 44-45 (7th Cir. 1994). In order for a court to order that entry of default should be set aside, defendants must show: "(1) good cause for their default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint." *United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989). A less stringent standard is applied to motions for relief from an entry of default than those requesting relief from a default judgment. *See Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 631 (7th Cir. 2009) (noting "the lenient standards that [the Seventh Circuit] ha[s] established for the application of Rule 55(c)"); *Pretzel & Stouffer*, 28 F.3d at 47; *Sims v. EGA Products, Inc.*, 475 F.3d 865, 868 (7th Cir. 2007); *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*,

726 F.2d 1202, 1206 (7th Cir. 1984); *Breuer Elec. Mfg. Co. v. Tornado Sys. of Am., Inc.*, 687 F.2d 182, 187 (7th Cir. 1982).

Judge Easterbrook took a different approach to the first requirement in *Sims*, stating that "Rule 55(c) requires 'good cause' for the judicial action, not 'good cause' for the defendant's error." 475 F.3d at 868. "Damages disproportionate to the wrong afford good *cause* for judicial action, even though there is no good *excuse* for the defendant's inattention to the case." *Id.* And, where the only harm to the plaintiff is "delay that imposes slight injury," such conduct "does not call for multimillion-dollar awards." *Id.* Thus, the better path is to penalize the defendant for their missteps—as long as the conduct is not willful, *see Ellingsworth v. Chrysler*, 665 F.2d 180, 185 (7th Cir. 1981) (vacating default where "[t]he record…reveal[ed] no willful pattern of disregard for the court's orders and rules")—commensurate with the gravity and harm of those missteps. *See Sims*, 475 F.3d at 868-69; *cf. Mirbeau*, 746 F. Supp. 2d at 1020 ("Sustaining the entry of default and allowing the defendant to be subject to liability is an extremely harsh penalty for a relatively minor mistake that was quickly rectified").

The Court now turns to applying the three requirements to vacate entry of default. To begin, the Court finds the approach taken by Judge Easterbrook in *Sims* to be appropriate when analyzing whether good cause exists. Here, like the defendant in *Sims*, Hannon Group has not shown good cause for its default,[2] but that finding alone is insufficient to let default stand

---

[2]Indeed, the Court previously described in detail the neglectful conduct which precipitated the Court's order directing entry of default. (*See* Docket #40 at 2) ("Defendants' failure to follow the local rules of this district and the Federal Rules of Civil Procedure do not stop with the July 14, 2014 motion, however. By this Court's estimation, *almost none* of Defendants' filings have been timely.").

where the plaintiff has shown little if any prejudice and the overall harm appears minor. The Court does not condone negligent disregard for litigation; that said, the Court also does not find it equitable to punish such negligence by leaving in place "entry of default [when that] would be overkill." *Sims*, 475 F.3d at 869; *cf. Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 359 (7th Cir. 1997) (discussing the Rule 60(b) standard—which as noted above is higher than that of Rule 55(c)—and noting that "the determination of what amounts to 'excusable neglect' under Rule 60(b) is . . . 'at bottom an equitable one'") (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Thus, while the Court finds no "good *excuse*" for Hannon Group's conduct, the significant claim for damages, when compared with the small amount of harm "afford good *cause* for judicial action." *Sims*, 475 F.3d at 868; *see also Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007) (cautioning against "[bringing] out the heavy artillery too soon"[3] and entering default to punish defendants, thereby "giving the plaintiff a windfall," when "impos[ing] increased monetary sanctions" remains a viable option). Accordingly, the Court finds that the "good cause" requirement for vacating entry of default has been met given the relatively low amount of harm caused by the defendant's conduct measured against the overkill of a multimillion dollar judgment. The Court will address the

---

[3]Here, to be clear, the Court did not "[bring] out the heavy artillery too soon." *Sun*, 473 F.3d at 811. The Court did not enter default as a sanction in this case. It did so because, as stated in its prior order, Hannon Group filed an untimely brief in opposition to the plaintiff's motion for entry of default; thus, after the Court granted the plaintiffs' motion to strike the untimely brief, the Court was obliged to grant the plaintiffs' now unopposed motion for entry of default. (*See* Docket #40 at 4) ("What the court is left with, then, is Plainttiffs' *now unopposed* 'Motion for Default…") (emphasis added).

matter of appropriate sanctions it will impose against Hannon Group —which will replace entry of default—below.

As to the second requirement, while the plaintiffs argue that Hannon Group failed to take quick action to correct entry of default, they misstate when quick action is to be measured from. The plaintiffs appear to be arguing that Hannon Group's repeated late filings prior to entry of default disprove any quick action argument Hannon Group has made. (*See* Docket #46 at 13) (arguing that Hannon Group's late answer defeats its quick action argument and the Court's prior order "rejected the 'quick action' argument" as well). To be sure, the Court did reject Hannon Group's quick action argument *prior* to the entry of default. (*See* Docket #40 at 2). But, under Rule 55(c), the Court is to analyze whether a party took "*quick action to correct [the default].*" *Di Mucci*, 879 F.2d at 1495 (emphasis added). To state the foregoing in a different way: It is not the defendant's neglectful conduct prior to entry of default that the Court is concerned with under Rule 55(c), it is the post-entry of default conduct that controls. *See Mirabeau*, 746 F. Supp. 2d at 1019 (finding quick action requirement met when the defendant "took quick action to remedy the default…[by] promptly [filing] a motion to the court to set aside entry of default").

Here, in response to the Court's order directing entry of default, Hannon Group timely filed a motion to vacate entry of default. (*See* Docket #43) (filed sixteen (16) days after the Court's order). As such, the quick action requirement has been met.

After having found good cause to vacate entry of default—despite no good excuse for the defendant's conduct that precipitated it—and quick action to correct default, the Court turns to the final requirement that the

defendant have "a meritorious defense to the plaintiff's complaint." *Id.* Here, Hannon Group alleges that its answer—the answer the Court struck as late—demonstrates it "holds meritorious defenses" to the plaintiffs' complaint. (Docket #43 at 12). Specifically, that in its answer it "alleges the facts underlying the true course of events, which completely rebut Reedigroup's claims of liability for breach of contract." *Id.* And, the defendant continues, it has filed affirmative defenses based on those facts and has alleged various counterclaims. *Id.*

The Seventh Circuit has stated that "[w]hen we say the defendant must show a 'meritorious defense' to the lawsuit, we mean more than bare legal conclusions,…but less than a definitive showing that the defense will prevail." *Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 505 (7th Cir. 2014) (internal citations omitted); *see also Wehr v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012) ("A meritorious defense need not, beyond a doubt, succeed in defeating a default judgment, but it must at least "raise[] a serious question regarding the propriety of a default judgment and…[be] supported by a developed legal and factual basis.") (quoting *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994)); *Pretzel & Stouffer*, 28 F.3d at 46 ("[A] meritorious defense requires more than a 'general denial' and 'bare legal conclusions.'") (quoting *Breuer Elec. Mfg. Co.*, 687 F.2d at 186).

The Court finds that Hannon Group has demonstrated it has a meritorious defense to the breach of contract claim asserted by the plaintiffs. This is so because: (1) Hannon Group alleges facts as well as legal arguments in support of its affirmative defenses and answers to the plaintiffs claims; and (2) the plaintiffs do not contest that Hannon Group may have a meritorious defense. Given that the breach of contract claim was the only claim the

plaintiffs requested entry of default on (*see* Docket #40 at 1, 4), the Court need not analyze the remainder of the claims for a meritorious defense.

In light of the foregoing, then, the Court finds it well within its discretion to grant Hannon Group's motion (Docket #43) and vacate the entry of default against it.

As noted above, however, Hannon Group will not walk away from the fray unscathed. Hannon Group itself suggested sanctions in lieu of entry of default (*see* Docket #52 at 6), and such a result is part and parcel of proceeding under the holding in *Sims. See* 475 F.3d at 868-69. The plaintiffs do not suggest a proper sanction; on the other hand, Hannon Group "suggests compensation for Plaintiff for all attorney fees, private investigator expense and other costs incurred in attempting to procure service…[would be] an appropriate sanction." (Docket #52 at 6).

The Court finds that the sanction proposed by Hannon Group is necessary, but not sufficient to remedy its conduct in this case; conduct which caused unnecessary delay and precipitated numerous motions to strike. Thus, in addition to the "attorney fees, private investigator expense and other costs incurred in attempting to procure service," Hannon Group shall pay all reasonable attorneys' fees and costs associated with all motions to strike that resulted from Hannon Group's failure to timely file documents before this Court. Specifically, Hannon Group shall reimburse the plaintiffs for attorneys' fees and costs associated with Docket #18 (plaintiffs' motion to strike the defendants' answer), Docket #28 (plaintiffs' motion to strike the memorandum of law in opposition to default judgment), and Docket #39 (motion to strike Docket #34 & #34-1, which was an untimely response to Docket #28).

The plaintiffs are directed to file an affidavit with the Court outlining the itemized total for all of the expenses noted above. The plaintiffs shall do so within fourteen (14) days of the entry of this order. After the affidavit is filed, the parties are encouraged to meet and confer to reach a final settlement regarding the total amount payable to the plaintiffs. Failure to reach an agreement will result in the Court requesting the parties fully brief the issue and perhaps referring the issue to a magistrate judge for resolution of the total sanction amount.

2. MR. HANNON'S MOTION TO VACATE DEFAULT

Mr. Hannon's arguments for vacatur of entry of default are somewhat similar to those of Hannon Group. First, Mr. Hannon argues that entry of default was not proper because "[n]o request for a judgment against [Mr.]Hannon was ever made to this Court." (Docket #41 at 2). Second, Mr. Hannon argues that he was not properly served by mailing and publication,[4] *see* Wis. Stat. § 801.11(1)(c),[5] because the plaintiffs did not exercise due diligence in attempting to serve him. *See Lavine v. City of Hayward*, No. 04-CV-0201, 2004 WL 2110753, at *2 (W.D. Wis. Sept. 20, 2004) ("Reasonable diligence requires a plaintiff to 'exhaust with due diligence any leads or

---

[4] Mr. Hannon also raises a due process argument in his reply. (*See* Docket #49 at 5) (stating that "Plaintiff's attempt at publication was constitutionally invalid under federal principles of due process under the Fifth and Fourteen [sic] Amendments."). Because the Court resolves Mr. Hannon's motion on other grounds, it need not wade into this swamp.

[5] Mr. Hannon also relies in part on the fact that the Court's prior order involved a clerical error, (*see* Docket #41 at 2-3), which referred to the statute as § 801.11(5)(c) instead of § 801.11(1)(c). (*See* Docket #40 at 4) ("Despite Defendants' wrangling to the contrary, the Court finds that Defendants were properly served under Wis. Stat. §§ 801.11(5)(c) and 180.0504(2)."). A substantive argument a clerical error does not make.

information reasonably calculated to make personal service possible.'") (quoting *West v. West*, 262 N.W.2d 87, 90, 82 Wis.2d 158 (1978)). Third, Mr. Hannon argues that, even if entry of default was proper, "he meets the requirements of federal law for vacatur[] of the default." *Id.* at 4.

Mr. Hannon's first argument is simply wrong. While the normal route by which the Clerk of Court enters default is upon motion of a party, the Seventh Circuit has stated that "[a]lthough Rule 55(a) refers to entry of default by the clerk, it is well-established that a default may also be entered by the court." *Breuer*, 687 F.2d at 15 (citing 6 Moore's Federal Practice P 55.03(1) at 55-31 (1976 ed.)). This makes sense, given the Seventh Circuit has referred to default judgment (and thus entry of default) as within a court's "arsenal of sanctions." *C.K.S. Engr's*, 726 F.2d at 1206. Given that the Court has the power to direct the clerk to enter default *sua sponte*, the fact that neither plaintiff requested entry of default against Mr. Hannon is therefore irrelevant.

Mr. Hannon's second argument—relating to defects in service of process—will be rejected for the same reason that Hannon Group's argument was: the Court has already ruled that Mr. Hannon was properly served and Mr. Hannon has not raised any arguments that compel the Court to revisit its prior ruling. *See, e.g., In re Ski Train Fire*, 224 F.R.D 543, 546 (S.D.N.Y. 2004) ("The district court's discretion to reconsider a non-final ruling is…limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.") (quotation marks omitted).

Again, if the Court were to entertain Mr. Hannon's service of process arguments, it would not reach a different result. Mr. Hannon attempts to analogize the instant case to *Haselow v. Gauthier*, 569 N.W.2d 97, 212 Wis.2d 580 (Ct. App. 1997), but that case does not help his cause. In *Haselow,* the court found the plaintiff had not exercised due diligence because the defendant did not attempt to effect personal service in Hawaii, the place the defendant had moved (and the plaintiff was aware of that fact); nor, in *Haselow*, was there any "indication of attempt[s] to contact the postmaster, or to determine if [the defendant] had other relatives, friends, neighbors or business associates who had relevant information." *Id.* at 101. That is not the case here, as the plaintiffs spoke with Mr. Hannon's father, searched all available records, and attempted service via various methods—including attempting to serve Mr. Hannon at a federal courthouse in New York. (*See* Docket #7, #8).

Mr. Hannon also ignores that in *Haselow* the Court stated: "'[t]he diligence to be pursued and shown by the affidavit is that which is reasonable under the circumstances and not all possible diligence which may be conceived.'" *Id.* (quoting *Parker v. Ross*, 217 P.2d 373, 379 (Utah 1950)). The plaintiffs had no known address for Mr. Hannon and no reasonable way to find it; they were aware he may be in China, but were also told by Mr. Hannon's father that he may be in Europe. (*See* Docket #7, #8). To the extent that Mr. Hannon is arguing that to exercise due diligence before resorting to service by publication a plaintiff must search every nook and cranny of the earth for a defendant, he grossly misapprehends what due diligence requires. Nor has he cited a case supporting this position.

Notwithstanding the foregoing, however, the Court will grant Mr. Hannon's motion (Docket #41) and vacate entry of default for the same reasons noted above regarding Hannon Group. While Mr. Hannon does not face a multimillion dollar judgment personally, it would be quite odd indeed to vacate default for Hannon Group—the defendant who is arguably more at fault for the events that have transpired—than Mr. Hannon himself. Additionally, it would be equally odd to leave in place entry of default for Mr. Hannon when the plaintiffs' original motion requested default only against Hannon Group. Thus, the Court will vacate entry of default against Mr. Hannon.

That said, after considering the equities of this case, the Court finds it proper to order that Mr. Hannon share in the sanction against Hannon Group above, but only in the portion attributable to the defendants' filing of a late answer. Specifically, Mr. Hannon shall share in the reimbursement of the plaintiffs for attorneys' fees and costs associated with Docket #18 (plaintiffs' motion to strike the defendants' answer). The remainder of the sanctions are the sole responsibility of Hannon Group. The parties are to follow all of the procedures already outlined above (regarding Hannon Group) to determine the sanction attributable to Mr. Hannon.

3. NEAL S. KROKOSKY'S RULE 7(H) MOTION TO WITHDRAW

Attorney Neal S. Krokosky ("Krokosky") filed a motion to withdraw as counsel for plaintiffs on January 19, 2015. (Docket #54). In his declaration he avers that he no longer works for the firm retained by the plaintiffs—Weiss Berzowski Brady LLP ("WBB")— and also no longer lives in Milwaukee, Wisconsin. (Docket #55 at 1). However, Krokosky does state

that "it was [his] understanding that WBB was willing to continue representing the plaintiffs in the above-captioned matter." *Id.*

In light of the foregoing, the Court will grant Krokosky's motion. (Docket #54). The plaintiffs shall inform the Court within fourteen (14) days whether WBB will continue to represent them or whether they will seek new counsel.

Accordingly,

IT IS ORDERED that Hannon Group's motion to vacate entry of default (Docket #43) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that Mr. Hannon's motion to vacate entry of default (Docket #41) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the plaintiffs shall file an affidavit with the Court outlining the itemized total for all of the expenses noted above within fourteen (14) days of the entry of this order; and

IT IS FURTHER ORDERED that Attoney Krokosky's Rule 7(h) non-dispositive motion to withdraw as counsel for the plaintiffs (Docket #54) be and the same is hereby GRANTED; the plaintiffs shall inform the Court within fourteen (14) days whether WBB will continue to represent them or they will seek new counsel.

Dated at Milwaukee, Wisconsin, this 10th day of February, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge